IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 08-00649-CV-W-FJG |
| ) | |
| UNITED STATES CURRENCY IN THE ) | |
| AMOUNT OF $43,920.00, AND ) | |
| 2006 FORD EXPEDITION, VIN ) | |
| No. 1FMPU155X6LA10292, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Pending before the Court is the United States of America's Motion for Summary Judgment (Doc. No. 45).

On September 8, 2008, a verified Complaint for Forfeiture in Rem was filed on behalf of the plaintiff, United States of America, against the defendant property, United States currency in the amount of $43,920.00, and a 2006 Ford Expedition, VIN No. 1FMPU155X6LA10292. The complaint alleges that, among other theories of forfeitability, the defendant property constitutes the proceeds of, or property traceable to the proceeds of, violations of 18 U.S.C. §§ 371, conspiracy, and 1341, mail fraud, which are forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), and 1961(1).

Process was fully issued in this action and returned according to law. Pursuant to a warrant for arrest of property issued by this Court, the United States Marshal for the District of Nevada arrested said property on October 17, 2008.

The known potential claimant, Larry Paul Goodyke, was served the summons and Complaint for Forfeiture In Rem and acknowledged service thereof.  Goodyke filed a claim and an answer in this case on October 14, 2008.

Any and all other potential claimants have been notified of the action and of their rights to assert a claim for the defendant  by publication of a public notice by the United States Marshal for the Western District of Missouri on October 6, 2008 by posting on an official government internet site, www.forfeiture gov, for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action, which publication is evidenced by an Affidavit of Publication on file with this Court.

The United States has moved for summary judgment on the basis that no question of material fact exists in this case, specifically, that the uncontroverted facts demonstrate that the defendant property itself constitutes proceeds, or is traceable to proceeds, of a scheme in violation of 18 U.S.C. § 1341, mail fraud.

18 U.S.C. § 982(a)(1) (C) provides that "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense," will be subject to forfeiture to the United States.  Mail fraud in violation of 18 U.S.C. § 1341 is a "specified unlawful activity" for the purposes of civil forfeiture of the proceeds of such an offense.  18 U.S.C. § 1956(c)(7)(A), incorporating 18 U.S.C. § 1961(1).

18 U.S.C. § 1341 provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

In the Eighth Circuit, the elements of mail fraud are: (1) devising or participating in a scheme to defraud; (2) intent to defraud; (3) knowledge that it was reasonably foreseeable that the mails would be used; and (4) use of the mails in furtherance of the scheme. *United States v. Redzic*, 569 F.3d 841, 847 (8th Cir. 2009).

The Court adopts the Statement of Uncontroverted Facts contained in the United States' Motion for Summary Judgment as the Court's findings of fact in this matter. Claimant Goodyke filed a responsive pleading but did not controvert any of the facts set forth by the United States.

The facts support summary judgment in this case. Claimant Goodyke devised a scheme to defraud purchasers of fraudulent diplomatic identification cards. On

3

February 10, 2010, the United States District Court for the Western District of Missouri entered criminal convictions against Goodyke in Case No. 07-00390-01/05-CR-W-DW. These convictions established Goodyke's guilt in a conspiracy to use, buy, sell, and transfer, diplomatic identification cards in violation of 18 U.S.C. § 371, and of five counts of Government Seals/Instruments Wrongfully Used in violation of 18 U.S.C. § 1017, during the time period immediately preceding the execution of the search warrant in which the money and truck were seized. Goodyke is barred by the doctrine of issue preclusion from contesting the essential facts established by the judgment in his criminal case. *See McKenzie Engineering Company v. National Labor Relations Board*, 737 F.3d 888, 891 (8th Cir. 2004) ("The doctrine of issue preclusion holds that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

In addition, the uncontroverted facts demonstrate Goodyke's involvement in a fraud scheme. Goodyke sold diplomatic credentials for up to $3000.00 apiece. He represented that these credentials would grant the bearer diplomatic status, which would include immunity from taxes and criminal prosecution. In fact, Goodyke had no legal right or ability to produce diplomatic identification or confer diplomatic status upon anyone. Goodyke's criminal conviction establishes that Goodyke knew that the diplomatic documents he produced were fraudulent, as that is an element of his offenses of conviction as set forth in the Indictment.

Moreover, Goodyke's scheme involved the United States mail, as demonstrated by the mailings from Russell Thompson to Goodyke, and from Goodyke to Antonio

4

McLandau and Denaud Egana. These mailing were integral to the scheme, as they contained information and correspondence about the fraudulent diplomatic documents being sold by Goodyke.

Furthermore, the evidence conclusively demonstrates that $43,920.00 in U.S. Currency and the truck represent forfeitable proceeds of Goodyke's fraud scheme. Goodyke told Kyle Larson that he had sold to approximately 800 people in the United States. At $1,000 to $3,000 per set of credentials, that represents sales of at least $800,000, up to $2,400,000. Some of the money recovered was intermingled with business records reflecting the orders. Goodyke told Larson that he had $40,000 to $45,000 in a safe in the house in the same conversation in which he told Larson that he had sold hundreds of identification cards.

Moreover, Goodyke's last reported legitimate income, in the amount of $1,113, was reported to Nevada State Employment Security in the fourth quarter of 2005. Nothing taken in the search warrant would indicate that Goodyke had any form of income other than from the sale of the fraudulent diplomatic documents. There is no other source of funding for the purchase of the truck except for the proceeds of the fraud scheme.

Summary judgment is warranted where, as here, a claimant has no source of legitimate income to explain the assets recovered from him. *United States v. 6 Fox Street*, 480 F.3d 38, 44 (1st Cir. 2007) (Claimant's lack of legitimate income, as reflected on his tax returns, during the time he sold drugs and acquired the defendant assets, left district court with "no choice" but to enter summary judgment for the Government on the forfeitability issue); *United States v. $174,206.00 in U.S. Currency*,

320 F.3d 658, 662 (6th Cir. 2003) (affirming summary judgment for the Government based on claimants' lack of legitimate income and absence of any rebuttal showing a legitimate source). In this case, the proof is not just circumstantial; there is direct evidence, including Goodyke's own statement, that the currency recovered is proceeds of the sale of the fraudulent diplomatic documents.

Goodyke has made the claim in several pleadings that the property seized from him represents gambling winnings. However, the facts in this case establish that Goodyke's sole source of income during the relevant time frame was from the sale of falsified documents in violation of law. Consequently, because the funds Goodyke used to gamble were proceeds, the funds he won are also forfeitable proceeds. *United States v. Betancourt*, 422 F.3d 240, 251-52 (5th Cir. 2005) (evidence that drug dealer had no legitimate source of income and filed no tax returns sufficient to show that money he used to purchase winning lottery ticket was drug proceeds; if defendant buys a lottery ticket with drug proceeds, the lottery winnings are traceable to the offense even though the value of the ticket appreciated enormously when it turned out to contain the winning number). In short, Goodyke's gambling winnings are also subject to forfeiture. In any event, the evidence shows that the currency recovered was, in fact, direct payments made by purchasers of the diplomatic documents, not gambling winnings..

Under these circumstances, the Court concludes that the $43,920,00 in United States Currency found in Goodyke's home on April 8, 2008, and the 2006 Ford Expedition seized that same day, represent proceeds of a mail fraud scheme and should be forfeited to the United States. Therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED**:

(1) that the United States' Motion for Summary Judgment is granted, and the claim filed by Larry P. Goodyke is dismissed;

(2) that a judgment of forfeiture is hereby entered against the defendant property, that is, United States currency in the amount of $43,920.00, and a 2006 Ford Expedition, VIN No. 1FMPU155X6LA10292;

(3) that all persons claiming any right, title or interest in or to the defendant property are held in default;

(4) that all claims and interests in the defendant property are forever foreclosed and barred;

(5) that the defendant property is hereby forfeited to the United States of America pursuant to 18 U.S.C. § 881(a)(1);

(6) that the defendant property shall be disposed of according to law.

(7) that the Clerk of the Court shall enter a judgment consistent with this order.

Based on the foregoing, the United States of America's Motion for Summary Judgment (Doc. No. 45) is **GRANTED**. Plaintiff's outstanding Motion for Extension of Time to File a Summary Judgment Motion (Doc. No. 44) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Date: 04/13/10　　　　　　　　　　　　　　　　**/s/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge